**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**March 16, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **L.G.**

**No. 20-0586** (Barbour County 18-JA-68)


**MEMORANDUM DECISION**


Petitioner Mother R.H., by counsel Katica Ribel, appeals the Circuit Court of Barbour County's April 17, 2020, order terminating her parental rights to L.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Jamella L. Lockwood, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in granting her a post-dispositional improvement period for the sole purpose of determining whether visitation with the child would be appropriate, admitting the Child Advocacy Center ("CAC") interview of an unrelated child into evidence, and terminating petitioner's parental rights rather than imposing a less-restrictive disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed a child abuse and neglect petition against petitioner after receiving a referral that petitioner maintained a relationship with her boyfriend, C.S., who had previously been found by a Barbour County Family Court to have sexually abused petitioner's child, L.G. The DHHR further alleged that it received a report that petitioner was found lying unconscious on a park bench from a drug overdose.

In August of 2018, the circuit court held a preliminary hearing. During the inquiry into petitioner's waiver of the hearing, she denied having a drug addiction but claimed that she had

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

obtained a prescription for buprenorphine as medically-assisted drug treatment. Petitioner further admitted to being in a relationship with C.S. and that she did not know whether to believe her child's disclosures of sexual abuse by C.S., who was six years old as of the petition's filing.

At an adjudicatory hearing held in September of 2018, petitioner stipulated to the allegations contained in the petition. Specifically, petitioner admitted that she was previously addicted to numerous drugs and that she failed to protect her child by continuing her relationship with C.S. However, petitioner claimed that she currently only consumed prescribed buprenorphine to treat her drug addiction and that she did not allow the child any contact with C.S. for the two months prior to the petition's filing. Moreover, petitioner claimed that she did not think C.S. "did anything" and that the child never reported the abuse to her so she "doesn't think it happened." Petitioner also claimed that her drug addiction did not impact her ability to parent her child. Based on petitioner's testimony, the circuit court found that petitioner lacked insight into her drug addiction, failed to be honest with the court, continued to engage in a relationship with her child's abuser, refused to believe C.S. sexually abused her child despite the family court's finding, and failed to protect her child. Given petitioner's conscious decision to choose her boyfriend over her child and her refusal to acknowledge the sexual abuse, the circuit court adjudicated her as an abusing parent, denied her motion for a post-adjudicatory improvement period, and denied her supervised visitation.

In November of 2018, the circuit court held a dispositional hearing. Petitioner advised the circuit court that she accepted the child's allegations of sexual abuse and was no longer in a relationship with C.S. Petitioner further advised that she was participating in parenting classes, was consistently submitting to drug screens and testing negative each time, and was working with service providers. At the end of the hearing, the circuit court found that petitioner's testimony was not credible. The circuit court expressed concern over petitioner's change in position regarding the allegations of sexual abuse, especially since it had only been a short time since she denied her child's reports of abuse and stated her intention to maintain her relationship with C.S. The circuit court found that petitioner consistently failed to protect her child by continuing a relationship with C.S. and chose him and drugs over her own child. However, because the child was clearly bonded with petitioner, the circuit court granted her a post-dispositional improvement period for the purpose of determining what visitation, if any, petitioner would have with the child.

After multiple continuances, a final dispositional hearing was held in February of 2020. A Child Protective Services ("CPS") worker testified that petitioner attended most multidisciplinary team ("MDT") meetings, complied with services such as parenting and adult life skills classes, and tested positive for her prescribed buprenorphine only. However, petitioner continued contact with C.S. throughout the proceedings unbeknownst to the DHHR, guardian, and circuit court. According to the CPS worker, this information came to light after petitioner and C.S. were filmed at a football game in which C.S.'s son, R.S., was a player. Petitioner denied that she was with C.S. despite the video evidence. The worker further testified that during her investigation into that video, R.S. underwent an interview at a Child Advocacy Center ("CAC") and reported that his father and petitioner were still in a relationship. The worker opined that there were no other services that she could offer to petitioner to address her continued contact with L.G.'s abuser.

2

Next, the president of the Barbour County Youth Football League testified that she observed petitioner with C.S. at one football game and watched a video of an incident between petitioner and C.S.'s ex-wife, S.H., at a second football game. The president testified that she investigated the matter and was advised that petitioner had attended several games with C.S. and had no other reason to be at the football games, such as being a player's parent or a volunteer.

The DHHR also presented the testimony of S.H.[2] S.H. testified that petitioner and C.S. were presently in a relationship and, in fact, continued to live together. S.H. testified that petitioner attended most of the youth football games with C.S. and, on October 19, 2019, petitioner "attacked" her at one of the games. According to S.H., at that particular game she and C.S. had a disagreement. As she was walking away, petitioner jumped on her from behind and pushed her to the ground. S.H. explained that she believed that petitioner and C.S. were living together because she often observed their vehicles at C.S.'s residence and provided photographs of the couple's cars parked together. S.H. also saw pictures of petitioner and C.S. posted on social media. S.H.'s boyfriend, C.B., testified that he, too, observed petitioner and C.S. together at the football games and saw their vehicles parked at the same residence.

Petitioner denied having attended any football games with C.S. Rather, petitioner claimed she attended the football games with a friend. Petitioner also denied attacking S.H. and testified that she simply wished R.S. a happy birthday, that S.H. began screaming at her, and that "[s]omehow [she] ended up on the floor." Petitioner claimed that her father had been driving the vehicle described by S.H. and C.B. that was parked outside of C.S.'s home.

Lastly, the parties proffered that the child's therapist recommended visitation as being in the child's best interests. The circuit court found that petitioner continued to lie about her relationship with C.S. and that the evidence demonstrated that she was still in a relationship with him as of at least January 23, 2020. The circuit court found that R.S.'s reports from the CAC interview were credible, as was the testimony of the youth football president. While the circuit court noted that there were issues and animosity between petitioner and S.H., it found that the video evidence showing petitioner and C.S. together was credible. The circuit court informed petitioner that she "failed . . . in the very most important term and condition of her improvement period." The circuit court found that petitioner lacked insight into her actions and the effects it had on the child and that she chose C.S. over her child. Further, there were no services the DHHR could provide to remediate the situation.

At the close of evidence, the circuit court terminated petitioner's parental rights to the child upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Nevertheless, given the evidence of the child's strong bond with and desire to see petitioner, the circuit court granted post-termination visitation, to be supervised by a third party. The circuit court

---

[2]C.S. and S.H. are the parents of R.S.

expressly stated that the visitation was the right of the child, not petitioner. Petitioner appeals the April 17, 2020, dispositional order terminating her parental rights to the child.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

At the outset we dispense with petitioner's argument that the circuit court erred in admitting R.S.'s CAC interview into evidence. Petitioner fails to provide a single citation to the record or applicable authority in her extremely brief argument with regard to this assignment of error. These failures are in direct contravention of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assignment of error is inadequate

---

[3]L.G.'s father was deemed a non-abusing parent during the proceedings below. The permanency plan for the child is to remain in his care.

and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address it on appeal.

Next, petitioner assigns as error the circuit court's granting her a post-dispositional improvement period for the purpose of determining whether post-termination visitation should be granted. Petitioner's argument is not entirely clear, but she contends that she complied with all her services, that the MDT could have sought more services to rectify the conditions of abuse, and that it would be in the child's best interest to "allow . . . [p]etitioner a chance to regain the bond she had with her child." Petitioner goes on to state that the child "deserves the chance to be able to have the mother daughter bond they had prior to removal," that "[a]ll reports of the visits indicate that they are very close," and that petitioner has not discussed C.S. with the child during visits. To the extent petitioner argues that she wants to "regain a bond" with her child, we note that she was granted post-termination visitation with the child through which she can foster said bond. If, however, petitioner is arguing that she should have been granted a post-dispositional improvement period for the purpose of reunification, rather than solely visitation, we find no error.

West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, the conditions of abuse and neglect ultimately surrounded petitioner's continued contact with C.S., a man the Barbour County Family Court conclusively found to have sexually abused petitioner's child. The record demonstrates that petitioner denied her child's accusations, refused to end her relationship with C.S., and was hostile towards the circuit court in her defense of C.S. Indeed, as of the adjudicatory hearing, petitioner testified that she continued a romantic relationship with C.S. despite everyone's warning of the consequences. At that point, the circuit court denied petitioner's motion for a post-adjudicatory improvement period based upon her choosing C.S. over her child. Then, at the initial dispositional hearing, petitioner testified that she came to her senses, ended her relationship with C.S., and desired to participate in services to regain custody of her child. However, the circuit court found petitioner's sudden change of heart suspicious and not credible. We will not disturb this credibility determination on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Due to the sexual abuse by C.S., the circuit court found that any improvement period granted to petitioner would be for the sole purpose of ascertaining whether visitation would be in the child's best interest. Given petitioner's adamant refusal to believe her child's disclosures of abuse and her less-than-credible testimony at the initial dispositional hearing, we find no error in the circuit court's refusal to grant petitioner an improvement period for the purposes of reunification.

5

Even assuming arguendo that petitioner was entitled to an improvement period for the purposes of reunification, her actions during the proceedings would have led to the termination of her parental rights. As noted above, the crux of petitioner's case was her refusal to end her relationship with her child's sexual abuser. Despite knowledge of the issue she needed to correct, petitioner maintained that relationship as late as January 23, 2020. Evidence demonstrated that petitioner attended several football games with C.S. and that their vehicles were seen at the same residence. Moreover, C.S.'s child reported during his CAC interview that petitioner and C.S. were in a relationship. This remained the case even after petitioner was provided with a myriad of services including adult life skills and parenting classes and counseling through her outpatient treatment program. As such, it is unclear what other services petitioner contends she should have been provided in order to remedy this situation. She was repeatedly informed that she was not to maintain contact with C.S., that her continued relationship was detrimental to her child, and that the child would not be returned to her care if she remained in a relationship with C.S. Nevertheless, petitioner chose to remain with C.S. While petitioner argues that the circuit court erroneously limited the scope of her improvement period, the record demonstrates that petitioner failed to address her foremost abusive behavior—her continued relationship with C.S.—despite the provision of services. She clearly failed to correct her behavior and further failed to demonstrate how other services would have aided her in successfully addressing this issue. Accordingly, even had petitioner's improvement period been for the purpose of reunification, she would not have been granted that disposition given her failure to remedy the crux of her issues with services. Under the limited circumstances of this case, we find that petitioner is entitled to no relief in this regard.

Petitioner also argues that the circuit court erred in terminating her parental rights rather than employing a less-restrictive alternative disposition, such as disposition pursuant to West Virginia Code § 49-4-604(c)(5).[4] However, the evidence as set forth above supports the termination of petitioner's parental rights to the child. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The petition was filed due to petitioner's continued relationship with C.S., who was found to have sexually abused her child. Petitioner testified throughout the preliminary and adjudicatory hearings that she did not believe her child's disclosures. The circuit court noted on the record that, in her defense of C.S., petitioner was belligerent, angry, and mean to all those involved. While

---

[4]West Virginia Code § 49-4-604(c)(5) provides as follows:

Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

petitioner eventually renounced her relationship with C.S. and adequately participated in the services offered to her, evidence came to light establishing that she had been dishonest with the court and concealed her relationship with C.S. for over a year while participating in an improvement period. The circuit court found that petitioner's claims that she separated from C.S. were not credible in light of the testimony of numerous persons, the interview of C.S.'s child, and videos and photographs showing petitioner and C.S. together. Petitioner continued this relationship despite services offered through an improvement period and having been informed that continuing her relationship with C.S. could affect any future contact with her child. While petitioner contends that she should have been granted a less-restrictive dispositional alternative, we have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to separate from the child's abuser despite the provision of services, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future or that termination was necessary for the child's welfare. Accordingly, petitioner's argument is without merit.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7